THE COUNTY OF PEORIA, Plaintiff-Appellee, v. ROBERT NAJMAN *et al.*, Defendants and Third–Party Plaintiffs-Appellants (Gary Stella *et al.*, Third-Party Defendants).

Third District No. 3—87—0587

Opinion filed May 2, 1988.

Law Offices of Day & Day, of Peoria (Robert G. Day, Jr., of counsel), for appellants.

John Barra, State's Attorney, of Peoria (Roberta Szydlowski, Assistant State's Attorney, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Robert Najman and William Greengoss (the Sellers) entered into a written real estate option agreement with the County of Peoria (the County) on October 23, 1981. The agreement granted the County, for the price of $25,000, the exclusive option to purchase the leasehold interest of the Sellers in certain hotel property. The County hoped that it might be able to convert the Sellers' hotel property into a county jail. To accommodate that hope, a public referendum on the proposition was scheduled to be held on November 3, 1981. The option was granted upon certain terms and conditions; the relevant terms and conditions for purposes of this case are as follows:

"1. This option shall expire at midnight on December 21, 1981.

2. This option may be exercised at any time prior to its expiration date. It shall be exercised in writing by mailing same

by registered mail, return receipt requested, or by personal delivery to Sellers or to either of them as provided herein. Mailing of said notice on the expiration date shall meet the requirements of time of notice as required hereunder.

\* \* \*

4. The Option Price paid hereunder shall be paid or returned by the parties as follows:

(a) If the referendum for a new Peoria County Jail to be held by the County on November 3, 1981 shall fail, the County shall decide by December 1, 1981 as to whether or not it shall proceed with this purchase pursuant to the terms of this Agreement and shall notify Sellers of that decision as provided herein by that date.

(1) If the decision of the County is to not proceed with the purchase, then Twelve Thousand Five Hundred Dollars ($12,500.00) of the option fee shall be immediately returned by Sellers to the County and the balance of Twelve Thousand Five Hundred Dollars ($12,500.00) of the option fee shall be retained by Sellers free and clear of all claims of the County.

(2) If the decision of the County is to proceed with the purchase, then all of the terms of this Agreement shall remain in full force and effect, and that notification shall be deemed an exercise of this option.

\* \* \*

22. Any notice required to be given hereunder shall be given in writing and be delivered to the other party either:

(a) Personally; or

(b) By certified mail, return receipt requested, addressed to the other party at the address of that party stated below."

On November 3, 1981, the jail referendum failed to pass. Notwithstanding the failure of the referendum, however, the County took no action to notify the Sellers whether or not it intended to proceed with the purchase. On December 21, 1981, the option expired by its own terms. Some eight months later, in August of 1982, the County filed a complaint alleging it was entitled to the return of $12,500. The Sellers responded with an answer and affirmative defense alleging that they had no duty to return the money due to the County's failure to notify them of its decision not to proceed with the purchase of the property by December 1, 1981. The County filed a motion for summary judgment which was granted. The Sellers appeal. We reverse.

■ The agreement between the parties is clear on its face. The County bought an option, for $25,000, to purchase certain property from the Sellers. Paragraph 1 of the option agreement provided that the option would remain open until December 21, 1981. Paragraph 2 stated that the option could be exercised at any time prior to December 21, 1981, and then set forth the specifics of such exercise. Paragraph 4(a)(1) concerned the limited circumstances under which part of the option price could be returned to the County. It provided that the Sellers would return half of the option price if three conditions were met—the referendum failed, the County decided by December 1, 1981, not to proceed with the purchase, and the County notified the Sellers of that decision by December 1, 1981. Although the referendum failed, the County neither took definitive action to abandon the project nor did it notify Sellers that it was abandoning the project at any time until some eight months after the notice date of December 1, 1981, and the end date of the option itself of December 21, 1981, had both come and gone.

The oral argument made before this court by the County that the contract should be interpreted to mean that the failure of the referendum, notwithstanding the failure of the County to notify the Sellers of its decision by December 1, 1981, caused the option to expire and required the immediate return of the money contradicts the plain meaning of paragraph 4(a) and gives no effect to paragraphs 1 and 2.

The County admits that it did not give timely notice to the Sellers of its decision not to go through with the purchase in order to get its money back. It further contends that the County's intentions could be implied through the failure of the public referendum. Since the referendum was public, the County argues that the Sellers had some sort of constructive notice of the County's desires. In sum, the County admits that it did not give notice, claims that such notice was not really necessary, and that the Sellers should have known that the County wanted part of its money back.

In the instant case, the price of the option was $25,000. For that price, the County had the right to exercise the option any time before midnight, December 21, 1981. Paragraph 4(a)(1) provided a limited exception whereby the County could recover half of the option price in return for notice given to the Sellers on or before December 1, 1981, that would shorten the option period by 20 days. Since the County failed to so notice the Sellers, the option remained open, and the Sellers remained bound, until December 21, 1981, for the agreed price of $25,000.

■ The argument offered by the County that the failure to re-

turn the money is a forfeiture which is abhorred by the law is unavailing. An option contract does not come within the equitable rules against forfeitures. It deprives no party of any right and abrogates no contract, but rather is the enforcement of the contract made by the parties. *Lake Shore Country Club v. Brand* (1930), 339 Ill. 504, 521-22.

Accordingly, the judgment of the circuit court of Peoria County is reversed.

Reversed.

BARRY and WOMBACHER, JJ., concur.